UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARC ZIMMERMAN,<br><br>Plaintiff,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA,<br><br>Defendant. | Case No. 21-cv-03346-YGR (TSH)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 30 |

The parties have a dispute about four subpoenas that Guardian has served on Zimmerman's medical providers, ECF No. 30, which the Court treats as a motion by Zimmerman to quash them. The subpoenas to Allen Treadwell, M.D., Dean Chou, M.D., and UCSF Health request: "Any and all medical records, records of examination, test results, invoices, or other documents (including but not limited to CT Scans, MRI Scans, pathology reports, X-Rays, blocks and slides, imaging stress test and radiology reports) from January 1, 2010 to December 1, 2015 for Marc Zimmerman (DOB 2/21/1957; SSN: XXX-XX-0313)." The subpoena to Walgreens seeks "Any pharmacy records from January 1, 2010 to December 1, 2015 for Marc Zimmerman (DOB: 2/21/1957; SSN: XXX-XX-0313)."

To see how these subpoenas fit in with the case, let's remember what Zimmerman is suing about. He alleges that he was insured under a group long-term disability insurance policy delivered to his former law firm and administered in California by Guardian. Complaint ¶ 8. Prior to enrolling and paying premiums, Zimmerman was advised that in the event of a covered disability, his coverage would be 60% of his pre-disability earnings up to a maximum of $15,000 per month. *Id*. ¶ 10. In 2017, he suffered a total disability, and Guardian soon thereafter began paying benefits of $15,000 per month. *Id*. ¶¶ 11, 12. In 2020, Guardian determined that because

1    Zimmerman had not completed an Evidence of Insurability ("EOI") upon enrollment, his
2    maximum monthly benefit was actually $10,000. *Id*. ¶¶ 14, 16. Guardian then claimed it was
3    entitled to a reimbursement of the overpaid amount and ceased paying further benefits. *Id*. ¶ 16.
4           Zimmerman has sued Guardian for payment of benefits and for equitable relief under
5    ERISA. *Id*. ¶¶ 32-46.[1] He also asserts a negligent misrepresentation claim, which is pled in the
6    alternative to his ERISA claims. *Id*. ¶¶ 51-56. He says that Guardian represented to him that his
7    monthly benefit amount was $15,000. If that wasn't true, he claims it was a misrepresentation.
8    He says he relied on that misrepresentation in making other financial decisions, including
9    purchasing an increased amount of life insurance, making annual contributions to his
10   grandchildren's college funds, and providing funds to his son for purchase of a condo. *Id*. ¶ 55.
11   Finally, Zimmerman sues for the intentional infliction of emotional distress. He says Guardian's
12   outrageous conduct consisted of never providing an EOI form for him to submit, then claiming
13   that failure precluded his entitlement to benefits of $15,000 per month. *Id*. ¶ 58. He also alleges
14   that it is outrageous that Guardian continued to pay him benefits of $15,000 a month for two
15   months after it had determined that his benefits were capped at $10,000 per month, and then
16   demanded repayment of the amounts overpaid and cut off any further benefits payments. *Id.*
17          Guardian argues that the medical information it seeks through the subpoenas is relevant to
18   show the medical information it *would have* obtained *if* Zimmerman had submitted an EOI. That
19   argument is persuasive because the EOI does require broad disclosures and also requires a broad
20   authorization for medical providers to provide information to Guardian. Zimmerman responds:
21   So what?
22          For most of his claims, Zimmerman's rejoinder is pretty good. His ERISA benefits claim
23   is about policy interpretation. He provided Guardian with whatever information he provided, and
24   that was or was not sufficient to entitle him to benefits of $15,000 a month. His ERISA breach of
25   fiduciary duty claim also presumes his entitlement to benefits of $15,000 a month, which either is
26   or is not true, and targets Guardian's conduct surrounding the refusal to pay out that level of
27
28   ---
     [1] His third claim for relief has been dismissed. ECF No. 21.

1 benefit. Guardian advances no argument about why the ERISA claims give rise to a need to
2 construct a but-for world about what Guardian would have done if it had been provided medical
3 records it was not provided.

4     Tort claims can give rise to a need to construct a but-for world, but the IIED claim here is a
5 poor candidate for that. The Court does not see how medical records that were entirely unknown
6 to Guardian would shed light on whether its behavior was extreme and outrageous. Mental health
7 records can be relevant to damages caused by IIED, but Guardian makes clear it is attempting to
8 take discovery related to Zimmerman's neck and back physical injuries.

9     The negligent misrepresentation claim is different, though. In a misrepresentation claim,
10 we want to know what the plaintiff *would have done* if he had been told the truth. Then, if the
11 trier of fact finds liability, it compares the real world to the but-for world in which the plaintiff had
12 not been lied to in order to figure out what the plaintiff's damages are.

13     Here, in the but-for world, Guardian would have told Zimmerman that he needed to
14 complete an EOI to be eligible for benefit payments of $15,000 per month. From reading the
15 Complaint, it sounds like Zimmerman cared about being eligible for that benefit amount. *See*
16 Complaint ¶¶ 10, 17, 52, 55. The trier of fact could therefore conclude that in the but-for world,
17 Zimmerman would have completed an EOI. And what happened next would have depended on
18 what Guardian learned as a result.

19     If the medical records came back clean, such that it was obvious Zimmerman was
20 insurable, Guardian would have found him eligible for payments of $15,000 per month. In that
21 event, it would be easy for the trier of fact to calculate the damages Zimmerman suffered as a
22 result of the negligent misrepresentation: $5,000 per month for every month of coverage. The
23 misrepresentation caused him not to fill out a form; had he filled it out, his benefits would have
24 been greater.

25     By contrast, if the medical records had shown that Zimmerman was in no way insurable,
26 then his damages would be different. There would be no causal relationship between the
27 misrepresentation (you don't need to fill out the form) and the additional $5,000 a month because
28 had he been told the truth, he still would not have been eligible for the greater benefit. However,

United States District Court
Northern District of California

3

Zimmerman *would have known* he wasn't eligible for $15,000 a month, so he wouldn't have taken any of his alleged actions in reliance on the belief that he was eligible for that amount of monthly payment. The trier of fact could therefore look at the actions Zimmerman took in reliance on the misrepresentation and compare them to what he would have done in the but-for world in which he knew the truth. Needless to say, this is a more uncertain and difficult to prove theory of damages.

And then there is the third possibility: the medical records are inconclusive, and both sides can argue about whether Guardian would have found Zimmerman insurable. This could leave both theories of damages on the table.

For these reasons, it seems to the Court that Guardian needs the information sought by these subpoenas to determine what Zimmerman's damages are for his negligent misrepresentation claim. Without this information, we don't know what happened to Zimmerman in the but-for world in which he was told he needed to complete the EOI to be eligible for benefits of $15,000 per month.

Zimmerman is right, of course, that his medical records are confidential and implicate important privacy rights. However, his negligent misrepresentation claim puts them squarely at issue in this litigation, so Guardian is entitled to seek them in discovery. The Court therefore denies Zimmerman's motion to quash the subpoenas. Because of the confidentiality of these documents, however, the parties need to enter into a protective order. The Court therefore orders the parties to meet and confer and within seven days to file either a stipulated proposed protective order or competing proposed orders and a joint discovery letter brief setting forth each side's position.

**IT IS SO ORDERED.**

Dated: February 3, 2022

THOMAS S. HIXSON
United States Magistrate Judge